BAILY BRYANT'S ADMR. AND HEIRS *v.* WORTHINGTON, GARRISON et al.

**Note Made to One's Own Order.**

A note made payable to a party's own order imports no legal obligation and can only be used as evidence of an indebtedness, not as a foundation of an action.

APPEAL FROM LEWIS CIRCUIT COURT.

February 23, 1866.

OPINION OF THE COURT BY JUDGE PETERS:

In May, 1851, Baily Bryant was a feeble old man of some seventy years of age, of dissipated habits and imbecile mind, if not insane, and wholly incapable of contracting; he resided in Lewis county, Kentucky, just across the Ohio river from Scioto county, Ohio, in which was situated Buena Vista. Bryant had been a farmer all his life.

At Buena Vista there was a firm which consisted of John McCall, Isaac Watts, and John W. Garrison, engaged in the store business under the style of McCall, Watts & Co.

There was another firm which claims to be a corporation under the style of The Buena Vista Free Stone Company, which consisted of said McCall, Watts, Garrison, Henry, Worthington, Thos. Stout, Michael Daugherty, Patrick Murphy, Patrick Kelly, Johnson A. Powers, Jeper Wamsly, and Jas. P. Warmsly.

McCall had frequently borrowed money of Bryant, and at the time of the various rock contracts was doubtless considerably indebted to him.

Bryant frequently visited McCall, who on all such occasions seems to have been liberal in treating the old man to good liquor.

Bryant at this time was a farmer residing in Lewis county, which seems to have been the only business of his life, and by frugality and industry had accumulated a comfortable independence. These two rock companies seem to have at this time jointly owned a steamboat, the "Friendship," which McCall commanded. McCall, Watts & Co. at this time had a lot of rock in Nashville, Tenn.

Bryant through some influence joined McCall in a stone enterprise, and Bryant & McCall purchased this stone in Nashville and contracted for other stone from McCall, Watts & Co., and executed their note, payable to their own order, dated March 10, 1851, due in one year, which was by them assigned to John W. Garrison. Bryant & McCall also contracted with the Buena Vista Free Stone Company for $1,200 worth of stone and executed them two notes to Henry Worthington, "agent, Buena Vista Free Stone Company," at six and nine months for $600 each, dated May 30, 1851. A portion of this rock was never delivered and a credit of over $500 was entered therefor on one of the notes. In the joint answer of Worthington and Garrison, which is sworn to by both, it is conceded that three-eighths of the note for $1,000 belongs to said McCall and five-eighths are ordered to belong to said Garrison.

Bryant went to Nashville but seems to have been so given up to the dissipation as to be incapable of attending to the sale of the rock or any other business. There he became acquainted with a woman of seemingly questionable character by the name of Fanny Culver, who on learning that he was a man of some property determined to make a prey of him by attentions, flattery, and favor. She induced him into a marital agreement by which she retained her own property and was to get his, and on the same day, August 25, 1851, they were married.

She soon thereafter returned with him to Lewis county, where, on January 20, 1852, he was regularly and legally found to be a lunatic, and a committee to take charge of him and his estate was appointed.

Fanny soon after got him by some means to Louisville where she seems to have resided, and soon thereafter he died. She presented a paper which the County Court of Jefferson admitted to record as his last will, but which the Jefferson Circuit Court set aside on appeal; there this has rested.

Bryant had made several mortgages of his property after executing these notes for rock.

Worthington and Garrison assail these mortgages as having been made when Bryant was incapable of doing so.

Mrs. Bryant sets up claim to his estate by virtue of the antenuptial contract, which they also assail, because he was incapable of contracting at its date.

The committee in Bryant's lifetime, and his administrators and heirs afterward, assail the contracts and notes executed by Bryant of these rock companies because, as they allege, of fraud, also because of incapacity on his part to contract at their respective dates.

The court below adjudge the mortgages, also the antenuptial contract, as invalid because of the incapacity of Bryant, but adjudged the notes to Garrison and Worthington valid and rendered judgment thereon.

The administrator and heirs of Bryant seek to reverse these judgments and, we think, they should be reversed for the following prominent reasons: McCall was jointly bound with Bryant in all these notes, yet a judgment is rendered against Bryant's administrator alone in favor of Garrison for the entire amount of the note for a thousand dollars, less a small credit, where the pleadings show three-eighths of it belonged to McCall.

But this note being made by Bryant and McCall to their own order imports no legal obligation, and as said by this court in Muhling v. Suell, 3 Metc. 285, can only be used as evidence of an indebtedness, not as the foundation of an action.

It is not shown how the rock so bought by Bryant and McCall in Nashville and that carried there by McCall was disposed of, by whom, nor who got its proceeds. There are numerous indications that all was not fair in the dealing by these rock companies with this feeble, imbecile, dissipated old man, and he nor his heirs should be held bound by either the written contracts or notes executed by him jointly with McCall, or separately, but the whole matter should be inquired into independently of said notes and contracts, and justice done according to the evidence and presentation of the case.

The same counsel seems to represent both Garrison and Worthington and McCall. This doubtless arises from that feeling of a community of interest which the circumstances in this case seems

to indicate as existing between these parties, and which would seem to be incompatible with candor and fair dealing with Bryant. So far as Garrison and Worthington may show they have legitimate claims, McCall should be held responsible for one-half, and his interest in each firm and its assets should be held responsible therefor by way of abatement or otherwise, so as to exonerate Bryant's estate from responsibility therefor; and if needs be both of said firms should be put into liquidation for this purpose.

The Buena Vista Free Stone Company claims to be a corporation, but it has shown nothing of this kind, and all the circumstances in this case repels such an idea; the notes executed by Bryant and McCall are not payable to it as a corporation, but payable to Worthington as agent for a company.

It is true a contract signed by Garrison as its president and Worthington as its secretary is exhibited, but it is somewhat remarkable that this contract seems not to have been in Bryant's possession; it bears date May 16, 1851; recites that two notes for $600 each at six and nine months have been executed, whilst the notes bear date May 30, 1851. The community of interest which McCall has with both these rock companies, and evident effort made by Garrison, Worthington, and McCall to throw all the responsibility of the payment of these notes on Bryant's estate, awake unfavorable suspicion and at least require that the court should see that ample justice is done in the premises.

There is also an unsettled controversy between McCall and Bryant's estate arising out of their individual dealings anterior to these rock transactions and this should likewise be adjusted and finally settled.

Reversed and Remanded.